IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Lynn Larry Hunt, ) | |
| ) | Civil Action No. 6:15-4286-BHH-KFM |
| Petitioner, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Warden of McCormick, ) | |
| ) | |
| Respondent. ) | |
| ) | |

The petitioner, a state prisoner proceeding *pro se*, seeks habeas corpus relief pursuant to 28 U.S.C. § 2254. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), this magistrate judge is authorized to review post-trial petitions for relief and submit findings and recommendations to the District Court.

## BACKGROUND

The petitioner is currently incarcerated at McCormick Correctional Institution in the South Carolina Department of Corrections (doc. 1 at 1). The petitioner was indicted by the Greenville County Grand Jury in June 2011 for armed robbery (2011-GS-23-1871), attempted murder (2011-GS-23-1872), and possession of a weapon during commission of a violent crime (2011-GS-23-1873) (app. 236–45[1]). He was represented by Daniel J. Farnsworth.

The petitioner proceeded to trial on February 6, 2012, and was found guilty (app. 171). The Honorable D. Garrison Hill sentenced the petitioner to consecutive terms of fifteen years for armed robbery and thirty years for attempted murder, and a concurrent sentence of five years for possession of a weapon during commission of a violent crime (app. 177–78).

---

[1]The appendix can be found at Docket Entry Number 13-1.

*Underlying Case Facts Presented at Trial*

In December 2010, the victim, a 61-year-old woman, was living in a tent in the woods behind a Goodwill Store in Greenville, South Carolina, along with other homeless men, women, and children (app. 66–69). The victim was saving money to move into a mobile home and kept approximately $400 in a pocketbook (app. 70). The victim knew the petitioner and had spoken to him occasionally; she would see him at the nearby McDonald's that she visited every morning (app. 70–71). The victim stated that before the attack, she had bought the petitioner breakfast at the McDonald's, and he had seen her pull money from her pocketbook to pay the cashier (app. 81).

On the morning of December 14, 2010, the victim saw the petitioner approaching her from the Goodwill parking lot (app. 71). The victim was standing near her tent, and she noticed that the petitioner appeared angry (app. 72). The victim testified the petitioner began throwing her belongings around and calling her bad names (app. 72–73). The petitioner pulled out a knife and held it over the victim (app. 74). When the victim turned around, the petitioner stabbed her in the back and shoulder (app. 75). The victim fell and broke her arm (app. 74). While she was on the ground, she saw the petitioner take her pocketbook and walk away (app. 75). The victim was able to find a nearby highway patrolman, who called an ambulance and waited with the victim until medical help arrived (app. 82). At the hospital, the victim told law enforcement the name of the man that attacked her (app. 84). The victim was also able to identify the petitioner from a photo lineup (app. 84–86).

*Direct Appeal*

The petitioner filed a timely notice of appeal at the South Carolina Court of Appeals (doc. 13-2). Robert M. Pachak, of the South Carolina Commission on Indigent

Defense, Division of Appellate Defense, filed an *Anders*[2] brief on the petitioner's behalf (doc. 13-3). The single issue raised by appellate counsel was "whether the trial court erred in determining appellant was competent to stand trial without having him evaluated first" (*id.* at 3). The Court of Appeals dismissed the appeal and affirmed the petitioner's conviction (doc. 13-4). The remittitur was issued on February 1, 2013 (doc. 13-5).

*PCR*

On August 2, 2013, the petitioner filed an application for post-conviction relief ("PCR") (app. 180). In his application, the petitioner alleged he was being held in custody unlawfully for the following reasons, quoted substantially verbatim:

> 1. My defense attorney failed to conscientiously discharge his professional respo[nsibiliti]es while he was hand[el]ing my case
>
> 2. My defense attorney failed to effectively challenge the arrest and seizure of Applicant
>
> 3. My defense attorney failed to act as my diligent conscientious advocate
>
> 4. My defense attorney failed to give me his complete loyalty
>
> 5. My defense attorney did not have my best interest in mind while he supposed to be investigating and preparing my case
>
> 6. My defense attorney failed to serve my cause in good faith
>
> 7. My defense attorney neglected the nessary investigations and the preparation of my case
>
> 8. My defense attorney did not do the necessary factual investigations on my behalf
>
> 9. My defense attorney did not do the necessary l[e]gal research
>
> 10. My defense attorney did not conscientiously gather any information to protect my rig[ht]s

---

[2] A brief filed pursuant to *Anders v. California*, 386 U.S. 738 (1967), effectively concedes the appeal lacks a meritorious claim.

3

> 11. My defense attorney did not try to have my case settled in a matter that would have been to my best advantage
>
> 12. My defense attorney did not advise me of all my rights to take any of the actions that were necessary to protect preserve them knowing that I was not versed in the law
>
> 13. My defense attorney knowing I was illiterate in the law properly ascertained whether or not I actually understood or comprehended all of the issues that were invol[v]ed in my case
>
> 14. My defense attorney never properly consulted with me or kept me inf[or]med with what was going on as far as my case
>
> 15. My defense attorney never explained to me or discussed with me of any of the elements of the crime charge
>
> 16. My defense attorney never made any attempt to ascertan whether or not I actually knew the elements to the crime charge were

(App. 187–89). The State made its return on April 8, 2014 (app. 199–203).

An evidentiary hearing was convened on August 28, 2014, before the Honorable James R. Barber, III (app. 205–27). The petitioner was present and represented by Caroline Horlbeck at the hearing (app. 205, 209). The State was represented by Assistant Attorney General Karen Ratigan (app. 205). By order filed October 21, 2014, Judge Barber found the petitioner had not established any constitutional violations or deprivations and denied and dismissed the PCR application with prejudice (app. 228–35).

*PCR Appeal*

The petitioner timely noticed his PCR appeal on November 12, 2014 (doc. 13-6). On July 8, 2015, LaNelle Cantey DuRant, Appellate Defender with the South Carolina Commission on Indigent Defense, Division of Appellate Defense, filed a *Johnson*[3] petition for writ of certiorari, raising whether "the PCR court err[ed] in failing to find trial counsel ineffective for not investigating the alibi witness when Petitioner Hunt had given him the

---

[3] A *Johnson* petition is the state PCR appeal analogue to an *Anders* brief.

name of the witness timely" (doc. 13-7 at 3). Along with the *Johnson* petition, DuRant filed a petition to be relieved as counsel (*id*. at 8).

Thereafter, the petitioner submitted a *pro se* submission raising the following issues, quoted substantially verbatim:

> Trail judge made harmful error solicitor made harmful error and defense attorney made harmful error which would have change the whole outcome of trail and sentceing to they even say in my transcripts that it made it look bad for the jury members
>
> My albi witness name was Donald Dixon that was also [redacted] the pink border house across from the unmepoment office they even speled his name wrong its not Donald Dickson? It Donald Dixon. My defense atty never talked to him I was their before 700am that's around a mile and half to walk so I realy wasent guilty of the said crime I gave that man a hundred dorral bill on the money I o to him + I drink a cup of coffee their and eat a can of chicken noodle coup to so that was about 830 when I left thrie so once again 1 hour walk at least so that would put me on Arch Street Ex around 1030 am not 900 am I am also gonna ask you to do a back ground check on the witness Wanda Jean Howard.
>
> You will find out that shes a corif crimenal to drug addict to a prostuete and to abitiual liar. She even went as far as made up her story to get a reward to bye durgs with and also a lotta tamka vodka. Which she is an alcoholic to and they also have a whole family of crimals on that street. They say my defense attorney made harmful errors in my trial and he also helped the state convict me and the PCR judge made an harmful error by not finding Dan J Farnsworth with insufficient countall bye not talking to my albi witness or calling him to court which would have made the jury find me not guilty of the following charge armed robbery and attempted murder and possion of weapon during a violate crime and also the trail judge Garrison Hill asked them if they found the weapon and they said know. He also said I cant get DNA and fingerprints out of the air and he also said he cant dissect my brain to see what was on my mind at the time also my attorney made a motion for a phcolgal evation. Judge denied the motion att did not object to it.
>
> I am also border line mentally retarded I whent to the Simpson Academy School in Easley SC 29640 when I was a kid this is also on the record to I have proof of this all you have to do is read the transcript pg. No# 5 its all their I cannot even tell time or say my ABC either and I also have a hard time rembing my §# due to head injurys I really didn't know that I have mental problems and Farnsworth . . . even said he thinks I have some problems but he let them convict me he even helped them convict me he says he was appointed to defende me in July

5

> 2010 these said crimes wasn't even committde until December 14 2010.
>
> And I also need to let you all know that I have been incarated going 5 yrs now and also att Farnsworth . . . also said in my trial Im a life time resident of Greenville Im not Im from Easley SC 29640 I family members called Farnsworth a lotta times for me to ask him to come to the GCDC to see me. He never talked to them he never returned thire calls I have been transfured to McCormick Corr Int . . . .

(Doc. 13-8).

In an order issued September 23, 2015, the Supreme Court of South Carolina denied the petition and granted PCR appellate counsel's request to withdraw (doc. 13-9). The court issued a remittitur on October 14, 2015 (doc. 13-10).

## **FEDERAL PETITION**

On October 19, 2015, the petitioner filed his Section 2254 petition (doc. 1). On December 17, 2015, the respondent filed a motion for summary judgment (doc. 14) and a return and memorandum (doc. 13). By order filed the same date, pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), the petitioner was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion (doc. 15). The petitioner did not respond, and on January 26, 2016, an order was issued giving the petitioner through February 16, 2016, to file his response (doc. 18). As the petitioner did not respond by that date, the undersigned issued a report and recommendation on February 18, 2016, recommending the petition be dismissed for failure to prosecute (doc. 20). On February 25, 2016, the petitioner filed objections to the report and recommendation stating that he mailed his objection prior to February 16, 2016, the date his response was due (doc. 22). On March 27, 2016, the district court referred the case back to the undersigned and directed the petitioner to file his response to the motion for summary judgment by April 7, 2016 (doc. 24). On March 28, 2016, the petitioner filed a response in opposition to the motion for summary judgment (doc. 26). The respondent filed a reply on April 7, 2016 (doc. 27).

6

In his federal habeas corpus petition, the petitioner makes the following claims, quoted substantially verbatim:

> **Ground One:** Insufingh Asst of Counsel for not investgating the albi witness
>
> *Supporting Facts*: The jury wouldnt have found me guilty at trail if att had got my albi witness to court which would have got the jury to find me not guilty of the following crimes armed robbery att murder possion of weapon the weapon wasn't found. None of the victim property was found on me either so I shouldn't been found guilty of this if the defense atty had investigated this albi witness.
>
> **Ground Two:** The Att and Court made Harmful erros
>
> *Supporting Facts*: I had albi witness to wher I was at at the said time I was at [redacted] Ave with Donald Dixon.

(Doc. 8-1 at 5–7.)

## APPLICABLE LAW AND ANALYSIS

### *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex*

*Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### *Exhaustion*

The respondent acknowledged that the petitioner exhausted his state court remedies and that the petition is timely (doc. 13 at 7, 9).

### *Ineffective Assistance of Counsel*

The petitioner has raised a claim of ineffective assistance of counsel during his trial. To be entitled to relief on an ineffective assistance claim, the petitioner had to have shown in state court that (1) trial counsel's performance fell below an objective standard of reasonableness, and (2) a reasonable probability exists that but for counsel's error, the result of that proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984). *Strickland* does not guarantee perfect representation, only a "'reasonably competent attorney.'" *Id.* at 687 (quoting *McMann v. Richardson*, 397 U. S. 759, 770 (1970)). There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case. *Id.* at 690.

The review of ineffective assistance of counsel claims in federal habeas is not simply a new review of the merits; rather, habeas review is centered upon whether the state court decision was reasonable. *See* 28 U.S.C. § 2254(d). Additionally, each step in the

review process requires deference—deference to counsel and deference to the state court that previously reviewed counsel's actions:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011)(internal citations omitted).

### Ground One

In Ground One, the petitioner alleges that Farnsworth was ineffective for failing to investigate a potential alibi witness and for failing to produce the alibi witness at trial (doc. 1 at 5). The petitioner is not entitled to federal habeas corpus relief based upon this allegation.

Here, the PCR court addressed Farnsworth's performance under the standard set forth in *Strickland* (app. 230–31). The PCR court found:

> [T]he Applicant failed to meet his burden of proving trial counsel should have investigated his alibi witness. While the Applicant stated he asked trial counsel to investigate Donald Dixon as his alibi witness, trial counsel testified they did not discuss an alibi defense. Trial counsel testified his general practice would have been to send his investigator to interview potential alibi witnesses. This Court finds trial counsel's testimony is credible. Regardless, as Dixon did not testify at the PCR hearing, this Court cannot speculate as to whether his testimony would have been helpful to the defense case. See Bannister v. State, 333 S.C. 298, 303, 509 S.E.2d 807, 809 (1998) (the South Carolina Supreme Court "has repeatedly held a PCR applicant <u>must produce the testimony of a favorable witness or otherwise offer the testimony in accordance with the rules of evidence</u> at the PCR hearing in order to establish prejudice from the witness' failure to testify at trial." (Emphasis in original).

***

9

> Accordingly, this Court finds the Applicant has failed to prove the first prong of the Strickland test—that trial counsel failed to render reasonably effective assistance under prevailing professional norms. The Applicant failed to present specific and compelling evidence that trial counsel committed either errors or omissions in his representation of the Applicant. This Court also finds the Applicant has failed to prove the second prong of Strickland—that he was prejudiced by trial counsel's performance. This Court concludes the Applicant has not met his burden of proving trial counsel failed to render reasonably effective assistance.

(App. 233–34.) The PCR court's denial of the petitioner's ineffective assistance claim was neither contrary to nor an unreasonable application of applicable Supreme Court precedent. First, the PCR court applied the *Strickland* standard, which is the applicable Supreme Court precedent. Second, the record fails to demonstrate the PCR court confronted a set of facts that were materially indistinguishable from those considered in a decision of the Supreme Court but arrived at a result different from the Supreme Court precedent.

The record supports the PCR court's determination. At the PCR hearing, the petitioner stated he had an alibi defense and gave Farnsworth the name and addresses of the witness (app. 219). The petitioner also claimed the witness would have told Farnsworth that the petitioner was present in his house at 9:00 a.m. (app. 219). Farnsworth testified he had at least four meetings with the petitioner, during which counsel discussed the charges, elements, and penalties of the crimes with the petitioner (app. 222–23). Farnsworth testified Dixon's name is in his file and his address was listed as a boarding house, but he did not recall whether he or his investigator actually visited Dixon (app. 223). Farnsworth testified, however, that his general practice is to investigate a potential alibi (app. 224). Farnsworth speculated his investigator may have been unable to locate the witness because of the boarding house address but he could not be certain (app. 225).

The PCR court found Farnsworth's testimony credible, and this finding is entitled to deference. *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)) ("[F]or a federal habeas court to overturn a state court's credibility judgments,

the state court's error must be stark and clear."); *see also Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them."); *Wilson v. Ozmint*, 352 F.3d 847, 858–59 (4th Cir. 2003) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 240 (2003)) (holding that the petitioner may overcome this presumption of correctness only by showing "'clear and convincing evidence to the contrary.'"). Moreover, as noted by the PCR court, prejudice from trial counsel's failure to interview or call witnesses cannot be shown where the witnesses do not testify at the post-conviction relief hearing. *Glover v. State*, 458 S.E.2d 538, 540 (S.C. 1995); *see also Jones v. Polk*, 401 F.3d 257, 269 (4th Cir. 2005) (finding a speculative allegation by a petitioner that a witness might have made an inconsistent statement with which counsel could have impeached the witness to be insufficient to warrant an evidentiary hearing). Thus, there is no evidence that the PCR court's decision was contrary to or an unreasonable application of applicable Supreme Court precedent, and the petitioner is not entitled to habeas corpus relief on this ground.

### Ground Two

In Ground Two, the petitioner states that "the att[orney] and court made har[m]ful erro[r]s" concerning evidence of an alibi witness (doc. 1 at 7). The court agrees with the respondent that this is the same issue raised in Ground One and not a separate ground for habeas relief, because, even liberally construing the petitioner's claim, he has failed to state a separate ground for relief. With respect to a potential claim against appellate counsel, ineffective assistance of trial counsel is not a direct appeal issue. *See U.S. v. Parker*, 38 F. App'x 138, 139 (4th Cir. 2002). Regarding any alleged error of PCR counsel or PCR appellate counsel, the issue of the petitioner's alibi witness was raised at PCR and in the petitioner's petition for writ of certiorari (*see* app. 214; doc. 13-7). Moreover, the petitioner could only raise this claim to excuse procedural default; however,

in this case, the supporting facts for Ground Two concern the evidence of an alibi witness, which was considered in Ground One and has not been procedurally defaulted. Finally, with respect to any alleged error of the PCR court, the undersigned has addressed this claim on the merits, supra. Thus, to the extent that the petitioner attempts to raise an error of any other attorney or court in Ground Two, the petitioner is not entitled to relief.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the court recommends that respondent's motion for summary judgment (doc. 14) be GRANTED and the petition be DENIED.

s/ Kevin F. McDonald  
United States Magistrate Judge

July 27, 2016  
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk of Court**
> **United States District Court**
> **300 East Washington Street — Room 239**
> **Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).